# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

OMEGA PATENTS, LLC,
a Georgia limited liability company,

      Plaintiff,

        v.

BAYERISCHE MOTOREN WERKE
AG, a Foreign company, and BMW OF
NORTH AMERICA, LLC,

      Defendant.

Case No. 1:20-cv-01907-SDG

**DEFENDANT BMW OF NORTH AMERICA, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR <u>IMPROPER VENUE</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION: OMEGA FAILED TO MEET ITS BURDEN ON VENUE, REQUIRING DISMISSAL OF THIS COMPLAINT .....................1

II.    BACKGROUND: OMEGA'S VENUE ALLEGATIONS POINT ONLY TO NON-PARTY LOCATIONS IN THE NORTHERN DISTRICT OF GEORGIA ........................................................................2

III.    ARGUMENT: OMEGA'S FAILURE TO ADEQUATELY PLEAD VENUE REQUIRES DISMISSING THIS COMPLAINT ............................8

    A.    Patent Venue Is Specific and Is Omega's Burden to Show .................8

    B.    BMWNA Does Not "Reside" in Georgia Under the First Prong of the Venue Statute ................................................................9

    C.    Omega Failed to Show BMWNA Has a "Regular and Established Place of Business" in the Northern District of Georgia ................................................................9

        1.    The only physical places Omega points to in the Complaint are of non-parties. ...................................................10

        2.    Every Court has held that absent collapsing the corporate form, non-party locations do not qualify as venue-establishing places of business of a defendant. .........................10

            a.    Registered agents do not create venue............................11

            b.    Non-party dealerships do not create venue. ...................11

            c.    Providing a warranty does not create venue...................18

            d.    The non-party dealerships are not agents of BMWNA and their places of business cannot be imputed to BMWNA under an agency theory................20

    D.    The Court Should Award BMWNA Costs and Fees ..........................24

IV.    CONCLUSION: OMEGA'S COMPLAINT SHOULD BE DISMISSED AND BMWNA SHOULD BE AWARDED COSTS AND FEES ................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                            **Page(s)**

*AGIS Software Dev., LLC v. ZTE Corp.*,
  Case No. 2:17-cv-517-JRG, 2018 WL 4854023 (E.D. Tex. Sept.
  25, 2018) ....................................................................................................9, 19

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
  No. 5:14-cv-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018)......................13

*In re BigCommerce, Inc.*,
  890 F.3d 978 (Fed. Cir. 2018) ............................................................................10

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*,
  C.A. No. 2:17-cv-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6,
  2018) ........................................................................................................2, 15, 20

*Board of Regents v. Medtronic PLC*,
  Case No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July
  19, 2018) (Yeakel, J.)............................................................................16, 17, 20

*Boston Sci. Corp. v. Cook Grp. Inc.*,
  269 F. Supp. 3d 229 (D. Del. 2017)...................................................................14

*Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*,
  No. 17-cv-379, 2017 WL 3980155 (D. Del. Sept. 11, 2017) ............................14

*Buckley v. Airshield Corp.*
  86 F.3d 1175 (Fed. Cir. 1996) ...........................................................................24

*CAO Lighting, Inc. v. Light Efficient Design*,
  No. 4:16-cv-00482, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) ....................13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..............................................................................................24

*Collins v. Amoco Prod. Co.*,
  706 F.2d 1117 (11th Cir. 1983) .........................................................................24

*Costa & Grisson Mach. Co., Inc. v. Qingdao Giantway Mach. Co., Ltd.*,
Civil Action No. 1:08-CV-2948-CAP, 2009 WL 10664780 (N.D. Ga. Dec. 2, 2009) ...................................................................24

*In re Cray*,
871 F.3d 1355 (Fed. Cir. 2017) .........................................1, 8, 10, 14

*In re Cray*,
871 F.3d at 1362–63 .......................................................................11

*Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*,
531 F.2d 1382 (7th Cir. 1976) .......................................................14

*E-System Design, Inc v. Mentor Graphics Corp.*,
Case No. 1:17-cv-1127-TCB, 2017 WL 8288122 (N.D. Ga. Nov. 13, 2017) . Case .......................................................................14

*EMED Techs. Corp. v. Repro-med Sys., Inc.*,
C.A. No. 2:17-cv-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018) ....................................................................12, 13, 19

*Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*,
No. 17-cv-01803, 2017 WL 4155347 (N.D. Cal. Aug. 29, 2017).....................14

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
290 F. Supp. 3d 599 (N.D. Tex. 2017) ..........................................13

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) .............................................8, 20, 21

*Grantham v. Challenge-Cook Bros.*,
420 F.2d 1182 (7th Cir. 1969) .......................................................14

*Hildebrand v. Wilmar Corp.*,
No. 17-cv-02821, 2018 WL 1535505 (D. Colo. Mar. 29, 2018).....................13

*Interactive Toybox v. Walt Disney Co.*,
Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ..........................................................................13

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
No. 3:16-cv-03153, 2017 WL 4512501 (M.D. Tenn. Oct. 10, 2017) ...............13

*Knapp-Monarch Co. v. Casco Prod. Corp.*,
    342 F.2d 622 (7th Cir. 1965) ............................................................................18

*LoganTree LP v. Garmin Int'l, Inc.*,
    No. SA-17-CA-0098, 2017 WL 2842870 (W.D. Tex. June 22,
    2017) ................................................................................................................14

*Magnacoustics, Inc. v. Resonance Tech. Co.*,
    132 F.3d 49 (Fed. Cir. 1997) ...........................................................................9

*Meyer v. Holley*,
    537 U.S. 280 (2003).........................................................................................21

*Nat'l Steel Car Ltd. v. Greenbrier Co., Inc.*,
    Civ. A. No. 6:19-cv-00721-ADA (W.D. Tex. July 27, 2020)...........................13

*National Steel Car Ltd. v. Greenbrier Co., Inc.*,
    Civil Action No. 6:19-cv-00721-ADA, Slip op. (W.D. Tex. July
    27, 2020) ..........................................................................................................15

*National Steel Car Ltd. v. Greenbrier Co., Inc.*,
    Civil Action No. 6:19-cv-00721-ADA (W.D. Tex. July 27, 2020) ..................12

*NetSoc, LLC v. Chegg Inc.*,
    Case No. 18-cv-10262, 2019 WL 48857340 (S.D.N.Y. Oct. 2,
    2019) ................................................................................................................11

*OptoLum, Inc. v. Cree, Inc.*,
    No. 16-cv-03828, 2017 WL 3130642 (D. Ariz. July 24, 2017) .......................14

*In re Oximetrix, Inc.*,
    748 F.2d 637 (Fed. Cir. 1984) .........................................................................24

*Patent Holder LLC v. Lone Wolf Distribs., Inc.*,
    No. 17-23060-CIV, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017).....................13

*Personalized Media Communications, LLC v. Google LLC*, Civil
    Action No. 2:19-CV-00090-JRG, (E.D. Tex. July 30, 2020) ...........................15

*Post Consumer Brands, LLC v. General Mills, Inc.*,
    No. 4:17-CV-2471-SNLJ, 2017 WL 4865936 (E.D. Mo. Oct. 27,
    2017) ................................................................................................................16

*Reflection, LLC v. Spire Collective LLC*,
No. 17-cv-1603, 2018 WL 310184 (S.D. Cal. Jan. 5, 2018) .............................13

*Schnell v. Peter Eckrich & Sons, Inc.*,
365 U.S. 260 (1961) ..........................................................................................8

*Southern Visions, LLP v. Red Diamond, Inc.*,
Case No. 1:18-cv-4566-ELR, 2018 WL 8221528 (N.D. Ga. Dec.
10, 2018) ...........................................................................................................9

*Soverain IP, LLC v. AT&T, Inc.*,
No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017) ................13, 19

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
315 U.S. 561 (1942)..........................................................................................8

*Sun-Tek Indus., Inc. v. Kennedy Sky-Lites, Inc.*,
856 F.2d 173 (Fed. Cir. 1988) ........................................................................24

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
282 F. Supp. 3d 916 (E.D. Va. 2017) .........................................................11, 13

*Talsk Res. Inc. v. Evernote Corp.*,
No. 16-cv-2167, 2017 WL 4269004 (N.D. Ill. Sept. 26, 2017) ........................14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)..............................................................................1, 3, 9

*West View Res., LLC v. BMW of North Am., LLC*,
Case No. 16-CV-2590-JLS (AGS), 2018 WL 4367378 (S.D. Cal.
Feb. 5, 2018) ...............................................................................................2, 15

*Westech Aerosol Corp. v. 3M Co.*,
927 F.3d 1378 (Fed. Cir. 2019) ...........................................................17, 18, 25

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
No. CV H-17-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018)...................13

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018) ....................................................................1, 8

**State Cases**

*Ford Motor Co. v. Miles*,
    967 S.W.2d 377 (Tex. 1998) ....................................................................21

*General Motors Corp. v. Washington*,
    559 S.W.2d 425 (Tex. Civ. App. 1977)...............................................22

**Federal Statutes**

28 U.S.C. § 1400(b) ...........................................................................*passim*

**State Statutes**

Ga. Code Ann., § 10-1-664.1 .................................................................21

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(3)....................................1, 8

## I.   INTRODUCTION: OMEGA FAILED TO MEET ITS BURDEN ON VENUE, REQUIRING DISMISSAL OF THIS COMPLAINT

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, BMW of North America, LLC ("BMWNA") moves to dismiss the Complaint of Plaintiff Omega Patents, LLC ("Omega") for failure to adequately plead venue.[1]  None of Omega's allegations regarding venue relate to BMWNA.  Instead, all of Omega's venue-related allegations concern independent dealers of BMW vehicles—non-parties who are separate and distinct entities from BMWNA.  This cannot establish venue.  BMWNA offered Omega the opportunity to file an amended complaint to fix this fundamental deficiency, but Omega refused, forcing this present motion.

After the Supreme Court's sea-changing decision regarding patent venue in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), and the Federal Circuit's subsequent interpretations of the patent-venue statute in *In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017) and *In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018), the law is clear it is the plaintiff's burden to establish that venue is appropriate where a domestic defendant is incorporated or "where the defendant has committed acts of infringement and has regular and established place of business."

---

[1] Defendant Bayerische Motoren Werke AG ("BMWAG") has not yet been served with the Complaint, has not entered an appearance in the case, and does not waive its right to contest sufficiency of process and service of process (if/when effected), lack of personal jurisdiction, and any other such arguments as it may deem appropriate.  This motion to dismiss is brought by BMWNA only.

28 U.S.C. § 1400(b).  Since BMWNA is incorporated in Delaware, Omega must establish that BMWNA has a "regular and established place of business" in this jurisdiction.  It has not.

The only soil in the Northern District of Georgia that Omega points to as establishing venue over BMWNA is owned and controlled by non-party dealerships.  The sheer tonnage of caselaw states that such non-parties cannot be the venue-anchoring places of a defendant.  By hinging its venue allegations solely on the places of non-parties—in other words, places *not* of BMWNA—Omega failed to meet its burden requiring dismissal of this Complaint.[2]

## II.   BACKGROUND: OMEGA'S VENUE ALLEGATIONS POINT ONLY TO NON-PARTY LOCATIONS IN THE NORTHERN DISTRICT OF GEORGIA

Omega accuses BMWNA of infringing U.S. Patent No. 9,458,814 ("the '814 patent") by selling certain vehicles with particular remote engine start systems.  *See*

_____

[2] Post-*TC Heartland*, this is the at least third time BMWNA has been accused of patent infringement in a jurisdiction where the venue allegations were based on dealership locations.  The Southern District of California, consistent with every other court (save one) that has confronted the issue of whether separate corporate entities can form the basis of venue, found venue **inappropriate**.  *West View Res., LLC v. BMW of North Am., LLC*, Case No. 16-CV-2590-JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5, 2018).  Only one judge from the Eastern District of Texas (Judge Gilstrap) has found otherwise, but ultimately vacated the decision on venue as to BMWNA.. *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, C.A. No. 2:17-cv-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) (finding dealership-based venue); 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019) (granting motion to vacate venue decision).

D.I. 1 at ¶¶ 12–41.  Omega's Complaint contains only seven paragraphs with allegations about BMWNA as they pertain to venue, and none relate to a place of business of BMWNA in the Northern District of Georgia.  *See* D.I. 1 at ¶¶ 3–8, 11. Thus, none of Omega's factual allegations, even if true, can establish venue over BMWNA.

In Paragraph 3 of the Complaint, Omega correctly states that BMWNA is a Delaware company.  D.I. 1 at ¶ 3.  In other words, BMWNA is not incorporated in Georgia, and thus does not "reside" here for purposes of patent venue.[3] Omega also correctly states that certain BMW- and MINI-branded vehicles are distributed through non-parties ("BMW dealers")—and not BMWNA.  D.I. 1 at ¶ 3.  Omega further alleges that "BMW" (without specifying which BMW entity) "maintains a Vehicle Distribution Center in Brunswick, Georgia."  D.I. 1 at ¶ 3.  Brunswick, Georgia is in the Southern District of Georgia, not this district.[4]

In the next paragraph, Omega correctly observes that BMWNA is registered to "do business" in Georgia, maintains a "Registered Agent for service of process in the District," and cites an address for non-party CT Corporation System.  D.I. 1 at ¶ 4.  Omega admits, however, that BMWNA does not sell any vehicles to customers

---

[3] *TC Heartland*, 137 S. Ct. at 1517 ("We therefore hold that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute.").
[4] Brunswick, Georgia is in the Southern District of Georgia. https://www.gasd.uscourts.gov/court-info/court-locations.

in this district; instead, vehicle sales occur "exclusively" through non-parties[5]—BMW dealerships—and lists five of these non-parties: (1) BMW of South Atlanta, (2) Nalley BMW of Decatur, (3) BMW of Gwinnett Place, (4) Global Imports BMW, and (5) United BMW. *Id.* Unable to allege that BMWNA sells vehicles here, Omega next vaguely claims that "[u]pon information and belief" "BMWNA engages in marketing activities" that promote BMW sales in Georgia and the Northern District of Georgia, without specifically claiming *where* such alleged "marketing activities" occur. *Id.* Finally, without evidence, Omega incorrectly speculates that "BMWNA promotes each of these locations as its place of business in the Northern District of Georgia on the BMWNA website." *Id.*

BMWNA does not promote dealerships as its own places of business. *See, e.g.*, https://www.bmwusa.com/privacy-policy/index.html (identifying dealers as "non-affiliated companies that market our products and services such as our authorized BMW dealers who are distinct entities and have their own privacy policies").

In Paragraph 5 of the Complaint, Omega alleges that "one or more Defendants" (without specifying whether this refers to BMWNA) engage in "marketing activities that promote the sale of BMW-branded products to customers

---

[5] Omega also incorrectly alleges that "BMWNA engages in sales of products that infringe the patent-in-suit . . ." D.I. 1 at ¶ 4. To be clear, BMWNA does not infringe the patent-in-suit.

and/or potential customers located in Georgia and in the judicial Northern District of Georgia." D.I. 1 at ¶ 5. Again, Omega does not specify any physical location in this district, let alone a physical location *of BMWNA*, where such activities allegedly take place. Instead, Omega only alleges that "Defendants" (again without specifying whether this includes BMWNA) "maintain interactive commercial websites, accessible to residents of Georgia and the Northern District of Georgia, through which Defendants promote and offer products for sale[.]" *Id.*[6] BMWNA does not sell any products to customers in Georgia on its website, and websites are not physical places.

Indeed, in Paragraph 6 of the Complaint, Omega admits that BMWNA's website directs customers to non-party locations in the district to buy BMW-branded vehicles. D.I. 1 at ¶ 6. ("Upon information and belief, these interactive commercial websites direct customers as to where to buy BMW-branded vehicles with accused products, including **the BMW dealerships** within the Northern District of Georgia."). Omega further describes certain features allegedly available on "Defendants'" websites, like viewing inventory and submission of customization choices to the non-party dealers. *Id.* Omega generically avers that the websites provide "service and care information, and materials about Defendants' products."

---

[6] Again Omega incorrectly states that "Defendants promote and offer products for sale that infringe the patents-in-suit in Georgia." D.I. 1 at ¶ 5. BMWNA does not infringe the patent-in-suit.

*Id.*  Again, however, Omega admits that "Defendants" market via **non-parties** "by causing advertisements for their vehicles to appear on the internet, television and radio programs broadcast into the District and in local newspapers distributed within the District."  *Id.*  Omega does not allege that any of this marketing activity occurs at a physical location of BMWNA in this district.

Paragraph 7 of the Complaint notes that the non-party dealers sign agreements with BMWNA.  D.I. 1 at ¶ 7.  Like any arms-length business relationship, the Complaint alleges that the agreements cover certain obligations.  *Id.* ("Upon information and belief, these dealer agreements set forth standards and requirements enumerated by Defendants that dealers are required to comply with for both sales and service.").  Citing only "information and belief," Omega incorrectly alleges that BMWNA "regularly, continuously, and systematically provides support to and control over the BMW dealerships located in the Northern District of Georgia."  *Id.*  But even if this were true, Omega does not allege that the independent dealerships are owned by BMWNA.

Paragraph 8, the final paragraph purporting to allege facts that support venue over BMWNA, points again only to the non-party dealerships' locations in the District.  Specifically, Omega alleges that BMWNA provides a warranty for new cars and pays for warranty work, provided that the work is performed at non-party "authorized dealers."  D.I. 1 at ¶ 8.  Omega admits that the service technicians that

perform the work are not employees of BMWNA, but rather are "employed at these dealerships," and receive certain BMWNA-sponsored training.  *Id.*

Thus, despite admitting that BMWNA is not incorporated in Georgia, has arms-length contractual relationships with non-party dealerships in the District who are separate and distinct corporate entities from BMWNA, vehicle sales occur "exclusively" at these non-party dealerships, and that the non-party dealerships are the ones that employ service technicians to perform warranty work, Omega somehow concludes that venue is appropriate via 28 U.S.C § 1400(b) because allegedly "Defendants have a regular and established place of business in Georgia and in this judicial district."  D.I. 1 at ¶ 11.  Omega has not sufficiently pled this.

BMWNA informed counsel for Omega that the Complaint was insufficient as to venue, and likely reflected a lack of pre-suit investigative diligence.  Ex. 1 (correspondence between BMWNA and Omega's counsel).  BMWNA offered to forgo filing this motion to dismiss if Omega agreed to file an amended complaint that removed the dealerships as a basis for venue.  *Id.*  Omega refused, citing concerns that an amended complaint would require more work for them to complete service on German **BMWAG** (not BMWNA) via the Hague.  Specifically, Omega was concerned that an "amendment would likely require Omega to translate the amended complaint and restart the service process," a problem that was caused by Omega's own failure to adequately plead venue in the first instance.  Accordingly,

BMWNA seeks dismissal of the Complaint, and seeks its costs and fees for briefing this motion.

## III.  ARGUMENT: OMEGA'S FAILURE TO ADEQUATELY PLEAD VENUE REQUIRES DISMISSING THIS COMPLAINT

### A.  Patent Venue Is Specific and Is Omega's Burden to Show

"[T]he Supreme Court has cautioned against a broad reading of the venue statute." *In re Google LLC*, 949 F.3d 1338, 1346–47 (Fed. Cir. 2020) (citing *In re Cray*, 871 F.3d at 1361; *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942)). "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (citation omitted).  The patent venue statute provides that venue is appropriate either (1) "where defendant resides" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." § 1400(b).  It is the plaintiff's burden to show that venue is appropriate.  *In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018).

Because Omega's Complaint is factually devoid of allegations that could make out a case as to venue for BMWNA, the Complaint must be dismissed.  Fed. R. Civ. P. 12(b)(3) (improper venue is a defense to a complaint); *In re Cray*, 871 F.3d 1355, 1367 (Fed. Cir. 2017) (directing district court to grant motion to dismiss under 12(b)(3) due to lack of venue).  Venue and jurisdiction must be appropriate as

to each defendant.  *AGIS Software Dev., LLC v. ZTE Corp.*, Case No. 2:17-cv-517-JRG, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 25, 2018) (citing *Magnacoustics, Inc. v. Resonance Tech. Co.*, 132 F.3d 49 (Fed. Cir. 1997)).

### B.   BMWNA Does Not "Reside" in Georgia Under the First Prong of the Venue Statute

Under the first prong of § 1400(b), a domestic corporate defendant "resides" **only** where it is incorporated.  *TC Heartland*, 137 S. Ct. at 1517 ("We therefore hold that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute.").  BMWNA is incorporated in Delaware, thus does not reside in Georgia, and accordingly, there is no dispute that Omega cannot establish venue under this prong.

### C.   Omega Failed to Show BMWNA Has a "Regular and Established Place of Business" in the Northern District of Georgia

 Under the second prong of § 1400(b), Omega must plead facts sufficient to show that venue is appropriate where "the defendant has committed acts of infringement and has a regular and established place of business."  § 1400(b).[7]  Not any place in the district can qualify; rather, there are three requirements relevant to

---

[7] While Omega's Complaint accuses BMWNA of infringement of the '814 patent, *see* D.I. 1 at ¶¶ 12–41, BMWNA expressly denies that it infringes the '814 patent, which is yet another reason why venue is improper.  *See Southern Visions, LLP v. Red Diamond, Inc.*, Case No. 1:18-cv-4566-ELR, 2018 WL 8221528, at *4 (N.D. Ga. Dec. 10, 2018) (finding venue inappropriate because plaintiff could not establish infringing product was ever located in the district).

the inquiry: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant.  If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

### 1.   The only physical places Omega points to in the Complaint are of non-parties.

As to the first two requirements that (1) there is a physical place in the district and (2) it must be a regular and established place of business, Omega points **only** to non-parties: the office of BMWNA's registered agent, CT Corporation, and the dealerships in this district.[8]   D.I. 1 at ¶ 3–8.  Thus, the only question remaining is whether these non-parties are "place[s] of" BMWNA.  They are not.

### 2.   Every Court has held that absent collapsing the corporate form, non-party locations do not qualify as venue-establishing places of business of a defendant.

The only physical places Omega points to in the Complaint are a non-party registered agent and the non-party dealerships.  Neither are "place[s] of" BMWNA.

---

[8] To the extent Omega attempts to rely on the Vehicle Distribution Center, in Brunswick, Georgia, that location is not "in the district" and therefore does not qualify as establishing venue in the Northern District of Georgia.  *Cf. In re BigCommerce, Inc.*, 890 F.3d 978, 986 (Fed. Cir. 2018) (holding for purposes of § 1400(b), in a state having multiple judicial districts, a corporate defendant resides only in the single judicial district where it maintains a principal place of business, or, failing that, the judicial district in which its registered office is located).

### a.     Registered agents do not create venue.

The address of BMWNA's registered agent, CT Corporation, cannot establish venue.  D.I. 1 at ¶ 4.  Courts have already determined that the location of a registered agent is irrelevant to determine venue under § 1400(b), and that "[c]onsideration of the appointed agent is especially inappropriate because the patent venue statute was intended to eliminate the abuses engendered by subjecting defendants to suit wherever they could be served."  *See, e.g.*, *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017) ("Symbology also observes that Lego Systems is registered as a foreign corporation with the Commonwealth of Virginia, and has appointed a registered agent to accept service of process in Virginia.  These facts fail to support a finding that venue is proper under § 1400(b).  Neither fact has any bearing on whether Lego Systems maintains a physical place within the District.") (citations omitted); *NetSoc, LLC v. Chegg Inc.*, Case No. 18-cv-10262, 2019 WL 48857340, at *3 (S.D.N.Y. Oct. 2, 2019) ("Similarly, the fact that Quora has a registered agent for service of process located in New York 'has no bearing' on whether Quora maintains a physical place in the district upon which venue could be predicated.") (citing *In re Cray*, 871 F.3d at 1362–63).

### b.     Non-party dealerships do not create venue.

Courts (including the Federal Circuit) have, over and over again, confronted the question of whether the physical presence of corporate entities independent and

distinct from the defendant, such as distributors, dealers, sellers, service providers, and the like, meet the statutory requirements for venue. Omega does not allege that the corporate separateness between BMWNA and the independent dealerships is a sham that would justify collapsing the corporate forms. And, consistently, courts do not impute the location of one corporate entity to another for venue purposes, if the entities maintain formal separateness as BMWNA and the dealerships do here. For purposes of venue, the law is definite that,"[s]o long as a formal separation of [closely related] entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." *EMED Techs. Corp. v. Repro-med Sys., Inc.*, C.A. No. 2:17-cv-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (citing Wright & Miller, Fed. Prac. & Proc. Juris. § 3823 (4th ed.)) (Bryson, J., sitting by designation from the Federal Circuit); *see also National Steel Car Ltd. v. Greenbrier Co., Inc.*, Civil Action No. 6:19-cv-00721-ADA (W.D. Tex. July 27, 2020) (finding subsidiary's place of business did not establish venue, holding that in "order to not dismiss this case, the Court must find the line between [defendant] and its subsidiaries have so blurred that the two become one" and the presumption of institutional independence of related corporate entities may be rebutted only by "clear evidence"). And there is abundant case law

from courts holding that a distributor's place of business cannot establish venue for

its supplier. *EMED Techs* 2018 WL 2544564, at *2.[9]

---

[9] A non-exhaustive list of such cases includes: *Nat'l Steel Car Ltd. v. Greenbrier Co., Inc.*, Civ. A. No. 6:19-cv-00721-ADA (W.D. Tex. July 27, 2020) (not disrupting the "heavy presumption" that two corporate entities are separate and finding subsidiary's place of business did not establish venue over defendant); *Interactive Toybox v. Walt Disney Co.*, Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) (not imputing retail Disney stores to parent Disney company for venue purposes); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916 (E.D. Va. 2017) (not imputing retail Lego stores to parent Lego company for venue purposes); *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV H-17-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); *Hildebrand v. Wilmar Corp.*, No. 17-cv-02821, 2018 WL 1535505, at *3 (D. Colo. Mar. 29, 2018) (no venue where "the places of business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-cv-2022, 2018 WL 400326, at *9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603, 2018 WL 310184, at *3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); *Patent Holder LLC v. Lone Wolf Distribs., Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *6 (S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); *CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-00482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (holding that physical location of distributors does not establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that "business connections with distributors, retailers, and

Even specifically as to BMWNA, another court has already thoroughly examined, and rejected, a theory of venue based on in-district dealerships.  In *West-*

---

consumers in this district" insufficient); *Talsk Res. Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *4 (N.D. Ill. Sept. 26, 2017) ("The Federal Circuit's decision in *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)."); *Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. 17-cv-379, 2017 WL 3980155, at *17 (D. Del. Sept. 11, 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, No. 17-cv-01803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-03828, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling infringing products at Home Depot stores in the district does not establish a place of business for the manufacturer); *LoganTree LP v. Garmin Int'l, Inc.*, No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting *Kabb, Inc. v. Sutera*, No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))); *see also Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 531 F.2d 1382, 1387 (7th Cir. 1976) ("In these cases we found venue improper in the subject district even though defendant's activities in the district included one or more of the following: maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis . . ." (quoting *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184–85 (7th Cir. 1969))); *see also E-System Design, Inc v. Mentor Graphics Corp.*, Case No. 1:17-cv-1127-TCB, 2017 WL 8288122, at * (N.D. Ga. Nov. 13, 2017) (noting it was incorrect, post-*Cray*, to argue that different business divisions can suffice as a "regular and established place of business" for each other).

*View Research*, the court rejected the theory that dealerships created venue, because that argument "ignore[d] the difference between separate and distinct corporate entities." 2018 WL 4367378 at *7. That court expressly held that there was no basis to pierce the corporate veil separating BMWNA and the dealerships, which would be the only basis to find venue. *Id.* at *8 ("Plaintiff's theory is predicated on the Defendants' operating agreement with the BMW and MINI dealerships exerting such control that the dealerships are essentially the same entity. This theory ignores the separate corporate forms of Defendants and the dealerships. The Court finds no facts to support collapsing the corporate forms; the dealerships' physical locations are not places of Defendants."). Thus, despite the fact that BMWNA and the dealerships have arms-length contractual agreements, without a finding supporting collapsing the corporate form, venue cannot attach based on the dealerships. And even in *Blitzsafe*, where the now-vacated Eastern District of Texas decision initially found venue based on dealerships, the court agreed that "there is not sufficient rationale to collapse the corporate forms of BMWNA and the dealerships." *Blitzsafe*, 2018 WL 4849345 at *12 n.15, *vacated by* 2019 WL 3494359.[10] And to

---

[10] Judge Gilstrap in the Eastern District of Texas recently found venue was appropriate over Google LLC based on a third-party location, but the facts are distinguishable. There, Google required the third party to dedicate a "Google Secured Area" and publicly held out the location to be its own by telling customers to send devices to "us" (i.e., Google) by sending them to the third-party location. *Personalized Media Communications, LLC v. Google LLC*, Civil Action No. 2:19-CV-00090-JRG, (E.D. Tex. July 30, 2020). In contrast, BMWNA does not own or

reiterate, Omega has not alleged any facts to support piercing the corporate veil, let alone "clear evidence" to upend the "heavy presumption" that corporate entities are separate. *National Steel Car Ltd. v. Greenbrier Co., Inc.*, Civil Action No. 6:19-cv-00721-ADA, Slip op. at 5 (W.D. Tex. July 27, 2020).

The decision in *Board of Regents v. Medtronic PLC* is further instructive on this issue (that is, the imputation of the location of one corporate entity to another for venue purposes). Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (Yeakel, J.). Initially, the court there found that defendant Medtronic had "ratified" in-district locations of another corporate entity (a subsidiary of Medtronic) by listing the subsidiary's place of business on Medtronic's website, and in telephone and web-based directories, and placing a Medtronic sign on the exterior of the building. *Id.* at *2. On motion for reconsideration, the court found that Medtronic in fact had **not ratified** any of the in-district locations, because Medtronic and its subsidiary maintained corporate formalities:

> Except where corporate formalities are ignored and alter ego relationship exists, the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate relative. *See, e.g.*, *Post Consumer Brands, LLC v. General Mills, Inc.*, No. 4:17-CV-2471-SNLJ, 2017 WL 4865936, at *2 (E.D. Mo. Oct. 27, 2017). The court finds nothing in the case file that reflects anything other than that these three companies—Medtronic, Inc., Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp.—are

---

operate any part of the independent dealerships, and BMWNA expressly states on its public website that the dealerships are "non-affiliated companies" and "distinct entities." https://www.bmwusa.com/privacy-policy/index.html.

anything other than three separate corporate entities that maintain their corporate separateness.  Further, nothing before the court reflects that Medtronic, Inc. has in any manner ratified the San Antonio building as a regular and established place for its business in this district.  The court finds that the use of the common or generic name Medtronic on the exterior of the building, as well as the press releases announcing the business to be conducted in the district by Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp., which are separate and distinct corporate entities, are insufficient to establish that venue in this district is proper for the Board's claims alleged against Medtronic, Inc. in this action.

*Id.*  Despite Omega's similar allegations that Defendants advertise in the district and have a website that connects potential buyers to in-district dealerships, *see* D.I. 1 at ¶ 5–6, BMWNA's connection to the in-district dealerships is even more attenuated than Medtronic's was to its subsidiary.  There, the companies were in the same corporate family—here, in contrast, the dealerships are true third parties and completely separate entities from BMWNA.  The *Medtronic* court concluded that, as long as corporate separateness is maintained, venue cannot be established by imputing a place of business of one corporation to another.  Therefore, if the *Medtronic* court was correct on the venue reconsideration as to the connection between Medtronic and a related subsidiary, given the corporate distinctiveness and separateness within the corporate Medtronic family, then it should be beyond cavil and dispute that wholly independent dealerships in the Northern District of Georgia cannot impute venue to separate-company BMWNA.

17

All this law is why the Federal Circuit has made clear that a venue theory similar to the one Omega asserts is "frivolous."  For example, in *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378 (Fed. Cir. 2019), the Federal Circuit held it was "frivolous" to argue that contractual relationships, like those between BMWNA and its dealerships, can establish venue, as Omega now does.  D.I. 1 at ¶ 7.  Indeed, Westech averred facts almost identical to Omega, specifically that the defendant maintained contracts with in-district distributors and even represented that they sold products in-district.  927 F.3d at 1381 (finding the appeal was frivolous as argued where plaintiff alleged that "Defendants maintain[ed] contractual relationships with distributors of the infringing products who [were] located in [the] judicial district, Defendants [had] sales representatives located in [the] judicial district, Defendants represent[ed] that they [sold] products in [the] judicial district, and Defendants earn[ed] substantial sales revenue from sales of the infringing products in [the] judicial district").  The Federal Circuit found Westech's argument "frivolous," and Omega's Complaint that echoes the same argument must be dismissed.

### c.     Providing a warranty does not create venue.

Omega alleges that BMWNA provides new car warranties, but admits that warranty service is performed at the independent dealerships by technicians employed—not by BMWNA—but the independent dealerships.  D.I. 1 at ¶ 8. Offering a warranty for a product that is honored by a dealership does not convert a

dealership into an established place of business of BMWNA. *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) ("Similarly, the fact that Casco's warranties against defective products were honored by its dealers and its authorized repair station does not mean that the company had a regular and established place of business in Chicago. This activity, although concerned with Casco's products, was conducted at places of business which were independently operated.").

BMWNA does no more than any other national distributor in a dealership relationship. Many national entities provide warranties that are serviced through local entities and provide interactive websites that direct customers to local dealers. Indeed, courts have found venue *improper* over defendants that also do this. *See Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293-RWS-RSP, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017); *Agis Software Dev., LLC, v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018).[11] To the extent that Omega may argue that BMWNA pays for and supervises warranties (D.I. 1 at ¶ 8) and this somehow elevates the dealerships into venue-anchoring places of business,

---

[11] Defendant AT&T in *Sovereign* has a website directing customers to dealers in this District and offers warranty service through local entities. Ex. 2. Likewise, plaintiff in *Agis* explicitly alleged that defendant ZTE USA had a "customer facing website" and provided "warranty service" through a third-party. Ex. 3 at 7, 16. Another plaintiff alleged that ZTE USA's website identified local dealers, Ex. 4 at 4, and submitted a screenshot of the same. Ex. 5.

Omega would be incorrect.  Paying for repairs is precisely the point of a product warranty,[12] and as Omega admits, the technicians are all employed by (and are thus supervised and controlled by) the independent dealerships.  D.I. 1 at ¶ 8.  At any rate, consistently, the "abundant case law" says a dealership is *not* the place of business of the defendant.  *EMED Techs.*, 2018 WL 2544564, at *2; n.9, *supra*. Accordingly, as Omega cannot establish venue based on BMWNA providing a warranty for its products, the Complaint should be dismissed.

> **d.    The non-party dealerships are not agents of BMWNA and their places of business cannot be imputed to BMWNA under an agency theory.**

To the extent that Omega attempts to argue that the dealerships are "agents" of BMWNA and thus venue should somehow attach, Omega would be incorrect. While the Federal Circuit has held that a "regular and established place of business" requires the "regular, physical presence of an employee or other agent of the defendant conducing the defendant's business at the alleged 'place of business,'" no standing court decisions have found that a dealership meets this limitation.  *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (finding that Google's contracts with

---

[12] The relevant definition of a warranty is "a usually written guarantee of the integrity of a product and of the maker's responsibility for the repair or replacement of defective parts."  *See* https://www.merriamwebster.com/dictionary/warranty.

in-district hosts for its servers did not establish an agency relationship for venue purposes).[13]

An agency relationship is a fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.  *In re Google*, 949 F.3d at 1345 (citing Restatement (Third) of Agency § 1.01).  The essential elements of agency are (1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act.  *Id.* (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)).

First, BMWNA does not direct or control the dealerships' actions.  As noted, BMWNA and the dealerships conduct business via arms-length contractual agreements.  D.I. 1 at ¶ 7.  Further, state law *expressly prohibits* BMWNA from directing or controlling the actions of dealerships, except in very limited circumstances that do not apply.  *See* Ga. Code Ann., § 10-1-664.1 ("Restrictions on ownership, operation, or control of dealerships by manufacturers and franchisors"

---

[13] *See Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, C.A. No. 2:17-cv-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) (finding dealership-based venue); 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019) (granting motion to vacate venue decision); *Board of Regents v. Medtronic PLC*, Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (Yeakel, J.) (granting motion for reconsideration to ultimately find no venue).

stating it "shall be unlawful for any manufacturer or franchisor or any parent, affiliate, wholly or partially owned subsidiary, officer, or representative of a manufacturer or franchisor to own, operate, or control or to participate in the ownership, operation, or control of any new motor vehicle dealer in this state within a 15 mile radius of an existing dealer . . .").[14]

Second, BMWNA does not manifest consent that the dealerships should act on its behalf.  Quite to the contrary, BMWNA expressly states on its public website that the dealerships are "non-affiliated companies" and "distinct entities."[15]

Third, the dealerships do not consent to act on BMWNA's behalf.  The dealerships are distinct corporate entities, acting on their own behalf.  Consistent with the Georgia state laws prohibiting BMWNA's control, the dealerships retain separate corporate ownership.  This is manifested at least by their maintaining their own individual websites that highlight their own unique stories of their businesses:

---

[14] *Cf. Ford Motor Co. v. Miles*, 967 S.W.2d 377, 380-82 (Tex. 1998) (recounting well-established Texas case law to support a finding that that local Ford dealers—even those performing warranty work—are not controlled the national distributor for the purposes of a state law venue statute more broadly worded than § 1400(b), which allowed venue wherever and out-of-state corporation had "an agency or representative"); *General Motors Corp. v. Washington*, 559 S.W.2d 425, 428 (Tex. Civ. App. 1977) (finding that warranty service performed by GM dealers did not establish that national distributor had local agent or representative needed to establish venue under state law).

[15] https://www.bmwusa.com/privacy-policy/index.html (identifying dealers as "non-affiliated companies that market our products and services such as our authorized BMW dealers who are distinct entities and have their own privacy policies").

- BMW of South Atlanta
  (https://www.bmwofsouthatlanta.com/about-us/)
  - o Clay, Slater, and Street Nalley's roots run deep.  Since 1918, the Nalleys have thrived in the auto sales and service industry.  Like their father, grandfather, and great grandfather, the sons have been paving their way in the auto retail world."

- Nalley BMW of Decatur
  (https://www.nalleybmw.com/dealership/about.htm)
  - o At Nalley BMW of Decatur, it's not just about buying a car.  It's about finding the perfect car for YOU.  That means we take the time to get to know you - your aesthetic preferences, your hobbies, and your driving habits. We take all these items into consideration when assisting you in finding the car of your dreams.

- BMW of Gwinnett Place
  (https://www.bmwofgwinnettplace.com/about-us/)
  - o BMW of Gwinnett Place is conveniently located at 3264 Commerce Avenue, Duluth, Georgia, 30096, and sells to customers in Atlanta, Duluth, Lawrenceville, Marietta, Roswell, Buford, Snellville, Conyers, Suwanee, East Point, Forest Park, Dunwoody, Sandy Springs, Mableton, Smyrna, Kennesaw, Alpharetta, Tucker, Redan and all other parts of Georgia and the entire Southeast.

- Global Imports BMW
  (https://www.atlantabmw.com/staff/meet-our-team.htm)
  - o Global Imports BMW is Atlanta's Premier BMW dealership. Our facility includes an on-site cafe with complimentary Wi-Fi, a great selection of both new and Pre-Owned vehicles, one of the largest Parts departments in the city, BMW factory trained and Certified technicians to complement our expanding service department.  Last but not least our professional and friendly staff that is ready to handle your needs down to the last detail.

- United BMW
  (https://www.unitedbmw.com/about-us/)

> o United BMW has two convenient locations to serve your needs. Visit us at 11458 Alpharetta Hwy in Roswell, Georgia, for all your Used, CPO, Service and Parts needs.  Or stop by our new location at 1501 Alpharetta Highway, Alpharetta, Georgia to view all of our New Car inventory.  United BMW serves customers throughout the south and across the entire United States.

The dealerships are thus not BMWNA's agents, are separate corporate entities, and cannot establish venue in the Northern District of Georgia. Accordingly, Omega cannot establish venue under an agency theory, and its complaint must be dismissed.

### D.    The Court Should Award BMWNA Costs and Fees

The Court has inherent authority to manage its own affairs so as to achieve the orderly and expeditious disposition of cases.  *Costa & Grisson Mach.  Co., Inc. v. Qingdao Giantway Mach. Co., Ltd.*, Civil Action No. 1:08-CV-2948-CAP, 2009 WL 10664780, at *14 (N.D. Ga. Dec. 2, 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  A court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Id.*  Though these powers must be exercised with restraint and discretion, assessing attorneys' fees is a "less drastic" sanction than, for example, dismissing a complaint with prejudice. *Id.*  Costs and fees are justified to "confirm [a] court's obvious lack of jurisdiction" especially where an argument is "frivolous."  *Buckley v. Airshield Corp.* 86 F.3d 1175 n.3 (Fed. Cir. 1996) (citing *Sun-Tek Indus., Inc. v. Kennedy Sky-Lites, Inc.*, 856

24

F.2d 173, 177 (Fed. Cir. 1988); *In re Oximetrix, Inc.*, 748 F.2d 637, 644 (Fed. Cir. 1984); *Collins v. Amoco Prod. Co.*, 706 F.2d 1117, 1115 (11th Cir. 1983)).  Finally, a party is to be "commended" for a course of conduct that involves contacting the opposing side explaining clear precedent on an issue, allowing the opposing party a chance to cure, and filing a motion only as a last resort when that party refuses.  *Id.* at n.3.

BMWNA alerted Omega to the deficiency in its venue pleading well in advance of filing this motion.  Ex. 1.  BMWNA offered to forgo filing this motion if Omega amended the Complaint to remove the dealerships as a basis for venue, but Omega refused, citing concerns about extra work to serve BMWAG.  *Id.*  BMWNA thus offered Omega a chance to cure its facially deficient complaint, but Omega refused, instead opting to press this frivolous argument.  *Westech*, 927 F.3d at 1381.  Thus, BMWNA requests its costs and fees in bringing this motion.

## IV.   CONCLUSION: OMEGA'S COMPLAINT SHOULD BE DISMISSED AND BMWNA SHOULD BE AWARDED COSTS AND FEES

It was Omega's burden to establish that venue was appropriate.  Omega instead pointed to non-parties' locations in the District, hoping that would be sufficient for venue.  It is not.  BMWNA offered Omega the opportunity to cure its defective complaint, but Omega refused.  Thus, BMWNA respectfully requests the Court dismiss Omega's complaint and grant its costs and fees for having to brief this motion.

Dated: August 3, 2020   Respectfully submitted,

/s/ Samhitha Medatia
Kara A. Specht (Ga. Bar No. 881687)
Samhitha Medatia (Ga. Bar No. 432323)
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
271 17th Street, NW, Suite 1400
Atlanta, Georgia 30363
Telephone: (404) 653-6400
Fax: (404) 653-6444
Email: kara.specht@finnegan.com
Email: samhitha.medatia@finnegan.com

*Counsel for Defendant BMW of North America,
LLC*

**Of Counsel:**

Lionel M. Lavenue (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
11955 Freedom Drive, Suite 800
Reston, VA 20190
(571) 203-2700
lionel.lavenue@finnegan.com

R. Benjamin Cassady (*pro hac vice*)
Kai Rajan (*pro hac vice*)
Kevin J. Spinella (*pro hac vice*)
Courtney Kasuboski (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant BMW of North
America, LLC*

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

I hereby certify that on August 3, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record who have appeared in this case.

Pursuant to Local Rule 7.1(D), counsel for Defendant BMW of North America, LLC certifies that the foregoing was prepared in 14-point Times New Roman font and otherwise conforms to the requirements of Local Rule 5.1.

/s/ Samhitha Medatia
Kara A. Specht (Ga. Bar No. 881687)
Samhitha Medatia (Ga. Bar No. 432323)
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
271 17th Street, NW, Suite 1400
Atlanta, Georgia 30363
Telephone: (404) 653-6400
Fax: (404) 653-6444
Email: kara.specht@finnegan.com
Email: samhitha.medatia@finnegan.com

*Counsel for Defendant BMW of North America, LLC*

**Of Counsel:**

Lionel M. Lavenue (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
11955 Freedom Drive, Suite 800
Reston, VA 20190

(571) 203-2700
lionel.lavenue@finnegan.com

R. Benjamin Cassady (*pro hac vice*)
Kai Rajan (*pro hac vice*)
Kevin J. Spinella (*pro hac vice*)
Courtney Kasuboski (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant BMW of North
America, LLC*