# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

OMEGA PATENTS, LLC,
a Georgia limited liability company,

       Plaintiff,

      vs.

BAYERISCHE MOTOREN WERKE
AG, a Foreign company, and BMW OF
NORTH AMERICA, LLC,

       Defendants.

Case No.:  1:20-cv-01907-SDG

## PLAINTIFF'S OPPOSITION TO DEFENDANT BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS (D.I. 43)

# TABLE OF CONTENTS

I.    BACKGROUND ...................................................................................... 1

II.   LEGAL STANDARDS ........................................................................... 2

III.  VENUE IS PROPER IN GEORGIA ...................................................... 3

   A.   Pertinent Allegations for Establishing Venue in this District. ...................... 3

   B.   BMWNA Has Committed Acts of Infringement in This District ................ 5

   C.   BMWNA Has Regular and Established Places of Business
        in This District ............................................................................................ 7

   D.   Exclusive BMW Dealerships in the District are a Place of Business for
        BMWNA Sales and Service. ........................................................................ 7

   E.   BMWNA's Demand for Fees is Baseless. .................................................. 14

IV.   CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Agis Software Dev., LLC, v. ZTE Corp.*,
  No. 2:17-CV- 00517-JRG, 2018 WL 4854023
  (E.D. Tex. Sept. 28, 2018)......................................................................13

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*,
  No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065
   (E.D. Tex. Sep. 5, 2018)............................................... 6, 8, 10, 11, 12, 13, 15, 16

*EMED Techs. Corp. v. Repro-med Sys., Inc.*,
  C.A. No. 2:17-cv-728-WCB-RSP,
  2018 WL 2544564 (E.D. Tex. June 4, 2018) ......................................12

*Ford Motor Co. v. Miles*,
  967 S.W.2d 377 (Tex. 1998) .................................................................14

*Funnelcap, Inc. v. Orion Indus., Inc.*,
  392 F. Supp. 938 (D. Del. 1975) ........................................................3, 7

*Gen. Motors Corp. v. Washington*,
  559 S.W.2d 425 (Tex. Civ. App. 1977) ...............................................14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  831 F.3d 1369 (Fed. Cir. 2016) ..............................................................5

*In re Cordis Corp.*,
  769 F.2d 733 (Fed. Cir. 1985) ................................................................3

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ..............................................3, 7, 8, 11

*Knapp-Monarch Co. v. Casco Prod. Corp.*,
  342 F.2d 622 (7th Cir. 1965) ...............................................................12

*Morano v. BMW of N. Am., LLC*,
  928 F. Supp. 2d 826 (D.N.J. 2013)..........................................9, 11, 12

*Nat'l Steel Car Ltd. v. Greenbrier Cos.*,
   No. 6:19-cv-00721-ADA,
   2020 U.S. Dist. LEXIS 132270 (W.D. Tex. July 27, 2020) ...............................12

*North American Philips Corp. v. American Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994) ..............................................................................5, 6

*Soverain IP, LLC v. AT&T Servs.*,
   No. 2:17-CV-00293-RWS, 2017 U.S. Dist. LEXIS 207551
   (E.D. Tex. Dec. 18, 2017). ....................................................................................13

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514(2017) ........................................................................ 2, 3, 14, 16

*Tour Tech. Software, Inc. v. RTV, Inc.*,
   377 F. Supp. 3d 195 (E.D.N.Y. 2019)....................................................................3

*West View Res., LLC v. BMW of North Am., LLC,*
   Case No. 16-CV-2590-JLS (AGS),
   2018 WL 4367378 (S.D. Cal. Feb. 5, 2018) .......................................................14

*Westech Aerosol Corp. v. 3M Co.*,
   927 F.3d 1378 (Fed. Cir. 2019) ...........................................................................16

**Statutes**

28 U.S.C. § 1400.......................................................................................... 2, 14, 16

35 U.S.C. § 27 ..................................................................................................................5

Ga. Code Ann., § 10-1-664.1 .................................................................................13

Plaintiff, Omega Patents, LLC ("Omega"), by and through its undersigned attorneys, files this response to BMW of North America, LLC's ("BMWNA") motion to dismiss. Because BMWNA commits acts of infringement in this District and its Atlanta area dealerships constitute "regular and established" places of business for BMWNA, the motion to dismiss should be denied as set forth herein.

## I.   BACKGROUND

BMWNA is the North American arm of Bayerische Motoren Werke AG ("BMWAG"), the entity that manufactures and sells BMW automobiles. BMWNA is the exclusive importer and distributor of BMW branded vehicles into the United States, where its vehicles are distributed and sold to consumers exclusively through BMW dealerships. These local dealerships are authorized and approved by BMWNA, are the only places to purchase a new BMW in this District, and act as the exclusive physical locations for BMWNA to advertise BMW inventory. BMW uses these dealerships for both sales and service, providing BMWNA with a physical presence to provide both local delivery of BMW vehicles and warranty service to the end customer.

The only locations residents of this District can buy a new BMW is at BMWNA dealerships. At any time, day or night, local residents can peruse BMW deals specific to this District, schedule a test drive, get a quote or review new

1

BMW inventory in this District for purchase via the website owned and controlled by BMWNA. At local dealerships (which includes the trademark BMW in the name), local residents encounter the BMW logo adorned on everything in sight and are able to drive and purchase the new BMW they saw on BMWNA's website or in BMWNA's advertising. After selling a BMW to these local customers through its branded dealers, BMW guarantees and pays for service under warranty, again through its branded physical dealerships in this District. BMWNA, to avoid this Court, argues its dealerships are somehow "separate" entities despite the control and nature of BMWNA awarding exclusive and limited dealerships in this District. The inescapable conclusion is that BMWNA has a physical place of business in this District at its local dealers, where the two function to sell and provide warranty service for BMW vehicles, including vehicles with the infringing remote start system. Venue is proper and BMW's motion should be denied.

II.   <u>LEGAL STANDARDS</u>

Venue for domestic defendants in patent infringement cases is governed by 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought [1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a

regular and established place of business." *TC Heartland*, 137 S. Ct. at 514. With respect to the second test, courts have "consistently held that an allegation of infringement is itself sufficient to establish venue and [the] plaintiff is not required to demonstrate actual infringement by [the] defendant[]." *Funnelcap, Inc. v. Orion Indus., Inc*., 392 F. Supp. 938, 943 (D. Del. 1975); *Tour Tech. Software, Inc. v. RTV, Inc*., 377 F. Supp. 3d 195, 201 (E.D.N.Y. 2019); *see also In re Cordis Corp*., 769 F.2d 733, 737 (Fed. Cir. 1985) ("[T]he issue of infringement is not reached on the merits in considering venue requirements."). To establish a "regular and established place of business," "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc*., 871 F.3d 1355, 1360 (Fed. Cir. 2017).

III.   <u>VENUE IS PROPER IN GEORGIA</u>

A.   <u>Pertinent Allegations for Establishing Venue in this District.</u>

BMWNA is registered to do business in Georgia, where it distributes vehicles through a distribution center in Brunswick, Georgia[1] to dealerships located throughout Georgia, including at least five dealerships in this District. (D.I. 1, ¶3-4.) Omega has alleged that "BMWNA engages in sales of products that infringe the patent-in-suit exclusively through BMW dealerships, five of which are

---

[1] Brunswick Georgia is in the Southern District of Georgia, where there is also an exclusive BMW dealer in Savannah: Critz BMW. (https://www.bmwusa.com/).

in the Northern District of Georgia." (D.I. 1, ¶4.) Omega further alleges that BMWNA "regularly engage[s] in marketing activities that promote the sale of BMW-branded products to customers and/or potential customers [ ] in the judicial Northern District of Georgia [and] maintain[s] interactive commercial websites, accessible to residents of Georgia and the Northern District of Georgia, through which Defendants promote and offer products for sale that infringe the patents-in-suit in Georgia." (D.I. 1, ¶5.) Omega also alleges that through its interactive websites, BMWNA directs "customers as to where to buy BMW-branded vehicles with accused products, including the BMW dealerships within the Northern District of Georgia." (D.I. 1, ¶6.) Moreover, these interactive websites allegedly have "submission forms that allow customers to view inventory at the dealers in this District and submit vehicle customization choices to a local 'BMW Center' for information and to purchase Defendants' vehicles." (D.I. 1, ¶6.)

Omega alleges "Defendants offer to sell their branded vehicles within the District, which include the infringing products, by causing advertisements for their vehicles to appear on internet, television and radio programs broadcast into the District and in local newspapers distributed within the District." (D.I. 1, ¶6.) Omega alleges "BMWNA regularly, continuously, and systematically provides support to and control over the BMW dealerships located in the Northern District

of Georgia," allowing BMWNA to sell and provide warranty service on vehicles that infringe in this District. (D.I. 1, ¶¶4, 7, 8.) Omega further alleges that "Defendants manufacture, import, offer for sale and/or sell vehicles in the United States and in this Judicial District that directly or indirectly infringe upon one or more claims of the '814 Patent." (D.I. 1, ¶15.) These allegations are sufficient to establish this District as the proper venue.

### B.   BMWNA Has Committed Acts of Infringement in This District

An "act of infringement" occurs when a person or entity, without authority, "makes, uses, offers to sell, or sells any patented invention" or induces such conduct. 35 U.S.C. § 271(a)-(b). "[T]he 'selling' of an infringing article has both a physical and a conceptual dimension to it," and thus a sale or an offer to sell may occur at the location of the buyer, the seller, or "points along the shipment route in between." *North American Philips Corp. v. American Vending Sales, Inc*., 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("The difficulty in answering this question is that unlike the 'making' and the 'using' of an infringing article, which as purely physical occurrences are relatively straightforward to place, the 'selling' of an infringing article has both a physical and a conceptual dimension to it."); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc*., 831 F.3d 1369, 1377 (Fed. Cir. 2016)

("[U]nder North American Philips, a sale may occur at multiple locations, including the location of the buyer, for purposes of personal jurisdiction.").

BMWNA, which is registered to do business in Georgia, admits that it imports and distributes BMW and MINI-branded vehicles and that it has a vehicle distribution center in Georgia. (D.I. 44, p. 2.) BMWNA sells and offers to sell vehicles that infringe the patent-in-suit at five exclusive BMW dealerships in this District. (D.I. 1, ¶4.) BMWNA regularly promotes the sale of infringing vehicles in this District through its exclusive BMW dealerships and through BMWNA's interactive website, which allows customers in this District to review local BMW inventory, including vehicles that infringe the patent-in-suit. (D.I. 1, ¶¶5, 6.) Local buyers in this District can customize a BMW vehicle and schedule a test drive at an exclusive BMW dealership in this District via BMWNA's website. (D.I. 1, ¶6.) BMWNA has at least offered for sale and/or sold vehicles that allegedly infringe the patent-in-suit in this District. *See North American Philips*, 35 F.3d at 1579; *see also Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065, at *12 (E.D. Tex. Sep. 5, 2018)[2]. While

---

[2] On June 20, 2019, Blitzsafe and BMW jointly moved to vacate this decision, the day after a successful mediation conference between the parties. Civil No. 2:17-CV-00418-JRG, D.I. 122, 123. While Omega does not have access to details of the settlement, filing a joint motion to vacate was presumably part of the mediated settlement. BMWNA references the fact that this decision was vacated in its

BMWNA offers attorney denials of infringement, Omega's allegations of infringement establish this prong for purposes of establishing venue. *See, e.g., Funnelcap*, 392 F. Supp. at 943.

### C.   BMWNA Has Regular and Established Places of Business in This District

In this action, Omega's allegations recognize that BMWNA has adopted and ratified the dealerships within this District as its places of business, by virtue of its advertising, sales and service of BMW vehicles at exclusive BMW dealerships in the District. There can be no dispute that the five exclusive BMW dealerships identified in the complaint are "physical, geographical location[s] in the district from which the business of the defendant is carried out." *In re Cray Inc.*, 871 F.3d at 1362. Similarly, the alleged exclusive BMW dealerships are regular and established, in that that are operated in a "steady[,] uniform[,] orderly[, and] methodical" manner in a fixed location. *In re Cray Inc.*, 871 F.3d at 1362. This prong of the venue statute is met by Omega's allegations.

### D.   Exclusive BMW Dealerships in the District are a Place of Business for BMWNA Sales and Service.

---

motion but does not reference the fact that the parties jointly requested the order be vacated after mediation, and there is no reason to believe it was vacated as a result of any reconsideration of the law, facts or analysis by the district court.

The final prong of the venue analysis, and the one BMWNA focuses on most, is whether the exclusive BMW dealerships in this District are in fact places of BMWNA. The Federal Circuit has recognized that relevant considerations include whether the defendant exercises "attributes of possession or control over the place." *In re Cray Inc.*, 871 F.3d 1355, 1363 (Fed. Cir. 2017). "Potentially relevant inquiries include whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Id.* at 1363-64. "Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id.* at 1363.

In *Blitzsafe*, Judge Gilstrap performed a detailed and thorough analysis of a personal jurisdiction and venue challenge by BMWNA (as well as BMWAG) that replicate the nearly identical venue challenge made by BMWNA in this action, other than the addition of a BMWNA distribution center in Georgia. 2018 U.S. Dist. LEXIS 173065. The facts in this case are virtually identical and arguments made in BMWNA's brief mirror those recited (and rejected) by Judge Gilstrap in his opinion. As other courts have recognized, only authorized dealers (like the five identified in the Complaint) are permitted to sell new BMW vehicles. *Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *20; *Morano v. BMW of N. Am., LLC*, 928 F.

8

Supp. 2d 826, 834 (D.N.J. 2013); D.I. 1, ¶4. The five BMW dealerships are held out to the consuming public as places of BMW where BMW, through its exclusive dealers, sells BMW cars to customers in this District. [3] (D.I. 1, ¶¶4, 5.) All of the BMW dealerships identified in the Complaint are within the "Atlanta BMW Centers Area," all include the trademark "BMW" in their names, and all are identified on the BMWNA website as BMW sales and service centers. (D.I. 1, ¶¶5-7.) On the BMWNA website, a search for "local dealers" for zip code 30363 brings up the five dealerships identified in the complaint, but a local consumer who clicks on any of those dealerships remains on the BMWNA website -- the only difference being that the top right corner identifies the selected dealer but nonetheless provides the same web pages of BMWNA.[4] Any of the five BMW dealerships in this District can be reached from the BMWNA website by clicking the tab to "Contact your local BMW center" in the "Buy" section. (D.I. 1, ¶¶5-7.) Among the other available links on BMWNA's website under "Buy" and "Shopping Tools" are links to "Search New Vehicle Inventory," "Schedule a Test Drive," "Build Your

---

[3] BMWNA argues Georgia law "expressly prohibits BMWNA from directing or controlling the actions of dealerships, except in very limited circumstances that do not apply." (D.I. 43-1, p. 21.) This fact supports a finding of venue, as BMWNA has no meaningful option to sell its vehicles to Georgia customers other than at the physical dealers, where BMWNA conducts its business.

[4] https://www.bmwusa.com/

Own" and "Get a Quote," among others. (D.I. 1, ¶¶5, 6; see also https://www.bmwusa.com/.)

BMWNA's website allows a local customer in this District to submit contact information to BMWNA and receive a call-back from the BMW center nearest them in this District. (D.I. 1, ¶¶4-6.) Similarly, a local consumer can view the "local" inventory, request a quote, apply for financing or build their own vehicle on the BMWNA website, all of which ultimately is provided by BMWNA through the local BMW dealer. (*Id*.) All such options are strictly controlled by BMWNA and facilitated by BMWNA through its local BMW dealers, ratifying that these BMW centers are places of business for BMWNA. *See Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *24.

Not only does BMWNA rely on local BMW centers in this District to provide the location for new and certified pre-owned BMW sales, including of the alleged infringing vehicles, but Omega alleges that BMWNA pays for and oversees all warranty service performed by local BMW centers in this District. (D.I. 1, ¶¶7-8.) Omega further alleges that service technicians employed at local dealerships participate in BMWNA-sponsored training programs, schools, and events. (D.I. 1, ¶8.) These allegations are consistent with judicial findings by other courts specific to BMWNA. "<u>BMWNA and the dealer function as an integrated,</u>

<u>two-part seller (or lessor)</u>. BMWNA makes <u>all</u> of its consumer sales or leases through its authorized dealers. Each sale is accompanied by a standard express warranty, developed by BMWNA, identifying BMWNA as the warrantor." *Morano*, 928 F. Supp. 2d at 837 (emphasis added); *see also Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *25. The district court in *Morano* went on to conclude that "[t]hrough dealerships in Florida, New Jersey, and throughout the country, BMWNA sells and leases its vehicles. Simultaneously BMWNA warrants that the vehicles it manufactures will be free from defects and that covered maintenance will be performed gratis." *Morano*, 928 F. Supp. 2d at 837.

Predictably, BMWNA's motion argues (as it did in *Blitzsafe*) that its exclusive dealerships are "independent and distinct" (D.I. 43-1, pp. 11-12), but this does not preclude a finding that the dealership is a regular and established place of business for BMWNA. Indeed, the Federal Circuit has recognized that ownership of the location does not dictate the outcome: "small business might operate from a home [not owned by the business]; if that is a place of business of the defendant, that can be a place of business satisfying the requirement of the statute." *In re Cray Inc.*, 871 F.3d at 1363. Many of the "abundant" cases cited by BMWNA in footnote 9 of its brief refer to imputing the location of a distributor or subsidiary to another named party. *See, e.g. EMED Techs. Corp. v. Repro-med Sys., Inc.*, C.A.

11

No. 2:17-cv-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018); *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-cv-00721-ADA, 2020 U.S. Dist. LEXIS 132270, at *5 (W.D. Tex. July 27, 2020). The basis for venue is not the allegation that BMWNA and its dealerships are alter egos, it is that BMWNA unequivocally has places of business in this District, and BMWNA conducts its business activity of selling, financing and warrantying at those places of business, BMW dealerships. As noted by other courts, "BMWNA and the dealer function as an integrated, two-part seller (or lessor)," meaning that while a BMW center may be leased by a different dealer, BMWNA and the individual BMW dealership jointly sell and service at each location, making it a place of business for BMWNA. *See, e.g., Morano*, 928 F. Supp. 2d at 837; *Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *27. BMWNA contends that honoring a warranty does not render a dealership a place of business for BMWNA, citing to *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965). However, the facts here relate not to honoring a warranty at a repair shop, but to the fact that dealerships are held out by BMWNA as places of business where local customers can buy and service a BMW, and where BMWNA warrants the vehicle.

Although BMWNA cites dozens of cases in its footnote 9, not a single case analyzes venue for a car manufacturer utilizing the exclusive sales, financing and

warranty service BMW has established. Most of the cases relate to the simple distribution of common goods. The sale of a light bulb in Home Depot is far different than the integrated sales, financing and service performed by BMWNA through its exclusive dealers. Consumers cannot walk into a retailer offering dozens of different cars and chose a new BMW, nor can they buy a new BMW from BMWNA directly.[5] Interestingly, BMWNA cites to (and attaches documents related to) *Agis Software Dev., LLC, v. ZTE Corp.*, No. 2:17-CV- 00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018)[6], another decision from Judge Gilstrap only a few weeks removed from his *Bliztzsafe* decision. In his *ZTE* decision, Judge Gilstrap found the allegations in that case did not establish that the defendant ratified a third party call center as its own place of business (*ZTE*, 2018 U.S. Dist. LEXIS 235914, at *7), in sharp contrast to his findings that "BMWNA ratifies the BMW Centers in this District as places of *its* business…" *Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *23 (emphasis original). The purchase of a new BMW is only from a BMW Center, *where BMWNA controls, facilitates and*

---

[5] BMWNA itself acknowledges the very limited circumstances in which a manufacturer can own a dealership, and if such limited circumstances are not present, a manufacturer cannot sell a new vehicle directly or indirectly to a consumer in Georgia. D.I. 43-1, p/ 21; Ga. Code Ann., § 10-1-664.1.

[6] BMWNA also cites to *Soverain IP, LLC v. AT&T Servs.*, along with as *ZTE*, but the allegations in *Soverain* focused on an agency/alter ego theory of venue of a subsidiary, which is not analogous to the facts of this case. *Soverain*, No. 2:17-CV-00293-RWS, 2017 U.S. Dist. LEXIS 207551, at *3 (E.D. Tex. Dec. 18, 2017).

*coordinates the process* from beginning to end, whether by arranging a test drive, showing the customer the local inventory, or providing financing on the purchase, then guaranteeing warranty support through that BMW Center for the life of the warranty. This is only possible because BMWNA ratifies its dealerships as its local places of business. As such, venue is proper.

E.    BMWNA's Demand for Fees is Baseless.

Despite citing dozens of cases unrelated to automotive dealerships addressing venue challenges since *TC Heartland*, the only decisions on point are *Blitzsafe* and *West View Res., LLC v. BMW of North Am., LLC,* Case No. 16-CV-2590-JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5, 2018).[7] Both are specific to a patent venue challenge by BMWNA under *TC Heartland*. In the *West View* decision, there is no express discussion of whether BMWNA ratified its dealerships as places of business. Instead, the Southern District of California focuses on whether BMWNA and its dealerships are legally separate entities.[8] Ultimately, the Southern District of California opted to transfer the case to

---

[7] The only other decisions cited by BMWNA relating to venue challenges in the context of automobile manufacturers both relate to questions of one county versus another in Texas for state law claims and venue provisions. *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 380 (Tex. 1998); *Gen. Motors Corp. v. Washington*, 559 S.W.2d 425, 428 (Tex. Civ. App. 1977). Neither of these cases has any bearing on questions of venue under §1400

[8] While BMWNA has a distribution center in Georgia (D.I. 1, ¶3), there is no mention of any such facility in California in the *West View* decision.

Delaware. In sharp contrast, Judge Gilstrap's *Blitzsafe* decision provided a detailed analysis of BMWNA's actual business activities in the district—made more relevant here because BMWNA argues its distribution and marketing is "consistent throughout the country" – i.e. the same model applied in Texas as here. (*See, e.g.*, D.I. 44, pp. 4-5.) Judge Gilstrap distinguished BMWNA's arguments that dealers were separate entities and that it could not sufficiently "control" dealerships from the fact that "BMWNA ratifies the BMW Centers in this District as places of its business" through both its sales and service in the district. *Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *23. The facts and allegations in this case mirror those of *Blitzsafe*, as should the outcome.

Ignoring Judge Gilstrap's decision (having jointly moved to vacate it immediately after settlement at mediation), BMWNA argues that not only is venue not proper, but that Omega's allegations of venue are frivolous even though analogous facts were sufficient to prove venue in other districts against BMWNA.[9]

---

[9] BMWNA argues it "alerted" Omega to deficiencies in the pleadings prior to filing its motion. (D.I. 43-1, p. 25.) Despite Omega's request, BMWNA could offer no other cases involving a venue challenge by an automobile manufacturer other than the two BMWNA cases. Counsel for BMWNA requested that Omega amend the complaint and remove factual allegations which would prejudice Omega because (a) the amendment may impact other potential challenges to the complaint available to both BMWNA and BMWAG, and (b) because Omega would be forced to restart the Hague service process on BMWAG, an entity that was represented by

To make this argument, BMWNA cites to *Westech Aerosol Corp. v. 3M Co*., 927 F.3d 1378, 1382 (Fed. Cir. 2019), where the Federal Circuit determined that plaintiff had "failed to plead *any* facts showing 3M had a regular and established place of business physically located in the Western District of Washington," even after plaintiff was given the opportunity to amend the complaint. The Federal Circuit went on to admonish the plaintiff, stating that it is not sufficient to "parrot the language of §1400(b)" in lieu of pleading facts. *See id*. *Westech* is not remotely analogous to the facts here, where Omega has specifically alleged the business activities of BMWNA that occur at five separate locations in this District—the same facts found sufficient to establish venue elsewhere under *TC Heartland*. Regardless of the Court's determination of venue, BMWNA's demand for fees and costs is without merit.

## IV.   CONCLUSION

Local residents in this District can only acquire a new BMW from one of the five BMW Centers identified in the complaint. BMWNA advertises these dealerships as the only places where local residents can acquire a new BMW, sets up test drives at the BMW Centers, and provides sales and service through though the same locations. BMWNA attempts to hide behind the notion that these

the same counsel that currently represents BMWNA and represented both entities for *Blitzsafe*, but which has refused to waive service here.

16

dealerships are "separate" entities, but the unescapable conclusion is that BMWNA and the local dealers in this District together sell or lease vehicles Omega has alleged infringe the patent-in-suit. BMWNA has adopted and ratified the dealerships within this District as its places of business, by virtue of its advertising, sales, and service of BMW vehicles at exclusive BMW dealerships in the District. Venue is proper and BMW's motion should be denied.

Respectfully submitted August 24, 2020.

*/s/ Ryan T. Santurri*
Brian R. Gilchrist, Florida Bar No. 774065
(*Admitted Pro Hac Vice*)
bgilchrist@allendyer.com
Ryan T. Santurri, Florida Bar No. 015698
(*Admitted Pro Hac Vice*)
rsanturri@allendyer.com
Allen, Dyer, Doppelt + Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Post Office Box 3791
Orlando, Florida  32801-3791
Telephone:  407-841-2330
Facsimile:   407-841-2343

Dan R. Gresham, Georgia Bar No. 310280
Dan.Gresham@thomashorstemeyer.com
Cynthia Lee, Georgia Bar No. 442999
Cynthia.Lee@thomashorstemeyer.com
Thomas│Horstemeyer, L.L.P.
3200 Windy Hill Road SE, Suite 1600E
Atlanta, Georgia 30339
Telephone:  770-933-9500
Facsimile:  770-951-0933

*Attorneys for Plaintiff Omega Patents, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

OMEGA PATENTS, LLC,
a Georgia limited liability company,

Plaintiff,

vs.

BAYERISCHE MOTOREN WERKE
AG, a Foreign company, and BMW OF
NORTH AMERICA, LLC,

Defendants.

Case No.:  1:20-cv-01907-SDG

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on August 24, 2020, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

Pursuant to Local Rule 7.1(D), counsel for Plaintiff certifies that the foregoing was prepared in 14-point Times New Roman font and otherwise conforms to the requirements of Local Rule 5.1.

/s/ Ryan T. Santurri
Ryan T. Santurri, Florida Bar No. 015698
(*Admitted Pro Hac Vice*)
rsanturri@allendyer.com
Allen, Dyer, Doppelt + Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Post Office Box 3791

19

Orlando, Florida  32801-3791
Telephone:   407-841-2330
Facsimile:    407-841-2343
***Attorneys for Plaintiff Omega Patents, LLC***