## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **OMEGA PATENTS, LLC,**<br>**a Georgia limited liability company,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.: 1:20-cv-01907-SDG** |
| **vs.** | ) ) | **JURY TRIAL DEMANDED** |
| **BAYERISCHE MOTOREN**<br>**WERKE AG, a Foreign company,**<br>**and BMW OF NORTH AMERICA,**<br>**LLC,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

_____

## DEFENDANT BMW OF NORTH AMERICA, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER VENUE

# **TABLE OF CONTENTS**

I.     OMEGA PLEADS NO MORE THAN MINIMUM CONTACTS, WHICH IS INSUFFICIENT TO ESTABLISH PATENT VENUE ...............2

II.    OMEGA ASKS THE COURT TO APPLY THE WRONG STANDARD...........................................................................................6

    A.    The correct standard finds proper venue based on a third party's place of business *only* when corporate structure can be dissolved .................................................................................6

    B.    Omega's reliance on the vacated *Blitzsafe* decision should be afforded no weight...............................................................8

III.   OMEGA ADMITS THAT IF THE COURT REQUIRES DISSOLUTION OF THE CORPORATE STRUCTURE, THEN THE NON-PARTY DEALERSHIPS ARE NOT PLACES OF BMWNA ...........11

IV.    THIS CASE SHOULD BE DISMISSED....................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*AGIS Software Dev., LLC v. ZTE Corp.*,
    No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28,
    2018) ...................................................................................................................14

*Bd. of Regents v. Medtronic PLC*,
    No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19,
    2018) ............................................................................................................7, 9, 10

*In re BigCommerce, Inc.*,
    890 F.3d 978 (Fed. Cir. 2018) ..........................................................................11

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*,
    No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065 (E.D.
    Tex. Sept. 5, 2018) .............................................................................................8

*Brevel Prods. Corp. v. H & B Am. Corp.*,
    202 F. Supp. 824 (S.D.N.Y. 1962) ...............................................................4, 12

*County of Los Angeles v. Davis*,
    440 U.S. 625 (1979)........................................................................................ 8-9

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017) ...............................................................*passim*

*E-Sys. Design, Inc. v. Mentor Graphics Corp.*,
    No. 1:17-cv-1127-TCB, 2017 WL 8288122 (N.D. Ga. Nov. 13,
    2017) .........................................................................................................5, 7, 12

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
    No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex.
    June 4, 2018)........................................................................................4-5, 6-7, 14

*In re Google LLC*,
    949 F.3d 1338 (Fed. Cir. 2020) ...................................................................10, 11

*Grantham v. Challenge-Cook Bros.*,
    420 F.2d 1182 (7th Cir. 1969) ..........................................................................14

*Knapp-Monarch Co. v. Casco Prods. Corp.*,
    342 F.2d 622 (7th Cir. 1965) ...............................................................14

*Morano v. BMW of North America, LLC*,
    928 F. Supp. 2d 826 (D.N.J. 2013) ....................................................14

*Nat'l Steel Car Ltd. v. Greenbrier Cos.*,
    No. 6:19-cv-00721-ADA, D.I. 54 (W.D. Tex. July 27, 2020) .............7

*O'Connor v. Donaldson*,
    422 U.S. 563 (1975) .............................................................................9

*OptoLum, Inc. v. Cree, Inc.*,
    No. CV-16-03828-PHX-DLR, 2017 WL 3130642 (D. Ariz.
    July 24, 2017) .....................................................................................15

*Pazur v. Belcher*,
    659 S.E.2d 804 (Ga. Ct. App. 2008) ....................................................6

*Post Consumer Brands, LLC v. Gen. Mills, Inc.*,
    No. 4:17-CV-2471 SNLJ, 2017 WL 4865936 (E.D. Mo. Oct. 27,
    2017) ...................................................................................................10

*Schnell v. Peter Eckrich & Sons, Inc.*,
    365 U.S. 260 (1961) ........................................................................2-3, 9

*Soverain IP, LLC v. AT&T, Inc.*,
    No. 2:17-CV-00293-RWS-RSP, 2017 WL 5126158 (E.D. Tex.
    Oct. 31, 2017) .....................................................................................14

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
    315 U.S. 561 (1942) .........................................................................2, 10

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017) .........................................................................3

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950) ...............................................................................9

*W. View Research, LLC v. BMW of N. Am., LLC*,
    No. 16-CV-2590 JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5,
    2018) .................................................................................................6, 8

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ..........................................................................10

**Statutes**

28 U.S.C. § 1400(b) ...................................................................*passim*

Ga. Code Ann. § 10-1-664.1 ..........................................................12, 13

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019)....................................................8

https://www.bmwusa.com/privacy-policy/index.html...........................................12

https://www.gasd.uscourts.gov/ ...............................................................4

Wright & Miller, *Fed. Prac. & Proc.* § 3823 (4th ed. 2018) ...................................5

Omega's Complaint does not plead any physical locations of BMWNA in this District, so venue is improper. The patent venue statute, 28 U.S.C. § 1400(b), unambiguously requires Omega to show that BMWNA has a regular and established place of business in this District.[1] And to show a venue-forming "regular and established place of business," Omega must prove: (1) there is a physical place in the district; (2) it is regular and established; and (3) it is a place *of BMWNA*. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). *All* of these are required for proper venue, but Omega *entirely* misses the third requirement.

Omega has not identified any place of business *of BMWNA* in this District. Instead, Omega relies solely on the "place[s] of business" *of third parties* (independent dealerships). But the law is clear—to establish venue over *BMWNA*, Omega must identify a place of business *of BMWNA*, not of someone else. Omega fails to do this, so it advances a flawed theory that doing business at a third party's location establishes venue. This flawed theory, however, has been unanimously rejected in the wake of the Supreme Court's sea-changing *TC Heartland* decision, which explicitly banned finding venue based on a "minimum-contacts" type

---

[1] As to allegations that BMWNA has committed acts of infringement, BMWNA does not infringe the patent-in-suit and has committed no acts of infringement in this District or anywhere else. There is also no dispute that Omega has not pled that BMWNA "resides" in this District, the other venue-establishing test under § 1400(b).

1

analysis (save one *vacated* decision, the primary basis for Omega's arguments).

Further, the *only* accepted exception to the venue rule, allowing venue over a defendant based on the place of business *of a third party*, which has never implemented in any case Omega cites (even Omega's one favorite but vacated decision), requires showing that the defendant and third party are so intermingled that the court can pierce the corporate veil. Omega has not come close to doing so here, which it must to prove this exacting, specific exception. In fact, Omega admits that it is not alleging that BMWNA and the third-party dealerships are alter egos—an admission that the only exception to venue based on a third party does not apply. *See* D.I. 49 at 12. So, the inquiry ends there. Third-party dealerships are not BMWNA's alter egos, their places of business do not belong to BMWNA, and the Complaint is thus defective for failing to plead proper venue.

## I.  OMEGA PLEADS NO MORE THAN MINIMUM CONTACTS, WHICH IS INSUFFICIENT TO ESTABLISH PATENT VENUE

Unique to patent law, § 1400(b) is "intended to define the exact limits of venue in patent infringement suits," and is "a restrictive measure, limiting a prior, broader venue" allowed under the general venue statute. *In re Cray*, 871 F.3d at 1361 (quoting *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942)). By enacting a specific statute to govern venue in patent cases, the legislature adopted a narrower scope "to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant

could be served." *Id.* (quoting *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961)). As such, § 1400(b) "is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell*, 365 U.S. at 264 (citation omitted). Thus, "the regular and established place of business standard *requires more than the minimum contacts* necessary … for satisfying the doing business standard of the general venue provision, 28 U.S.C. § 1391(c)." *In re Cray*, 871 F.3d at 1361 (emphasis added) (citation omitted).

Despite the well-settled principle of venue, as reinvigorated by the Supreme Court in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), and its progeny,[2] § 1400(b) is a narrow statute with exact limits, but Omega still asks this Court to apply the old, liberal, minimum-contacts test, rejected by every non-vacated decision since *TC Heartland*. Omega pleads four main allegations that, even if taken as true,[3] merely show that BMWNA has contacts, not that BMWNA has *its own* place of business here or that third-party dealerships are veil-piercing alter egos of BMWNA. *See* D.I. 49 at 3-5. Specifically, Omega alleges:

> (1) BMWNA is registered to do business in Georgia (D.I. 1, ¶ 4);
>
> (2) BMWNA maintains distribution centers in Brunswick and Savannah

---

[2] For patent venue, many cases applying the correct standard are outdated, because *TC Heartland* reversed thirty years of incorrect law. *In re Cray*, 871 F.3d at 1359.
[3] BMWNA denies these facts as enumerated in its Answer. *See* D.I. 44.

(notably, both centers are located outside this District) (*id.*, ¶ 3);[4]

    (3) BMWNA engages in marketing activities and maintains a website accessible from this District (*id.*, ¶¶ 4-6); and

    (4) BMWNA engages in sales of products through and provides support to dealerships in this District (*id.*, ¶¶ 5-8).

Yet, none of these four allegations as to venue establishes venue under § 1400(b).

First, business registration in a district cannot establish venue in a patent case. 28 U.S.C. § 1400(b); *Brevel Prods. Corp. v. H & B Am. Corp.*, 202 F. Supp. 824, 828 (S.D.N.Y. 1962) ("[t]he theory that registering to do business in the state is sufficient to subject a corporation to venue jurisdiction in patent cases" has been "specifically rejected" (citations omitted)). Omega does not contend otherwise.

Second, Brunswick and Savannah are in the Southern District of Georgia[5] and, thus, are irrelevant to BMWNA's subjection to venue in this District, because patent venue is based on the "judicial district[s]," not states. 28 U.S.C. § 1400(b).

Third, BMWNA's nationwide marketing activities and nationwide website are irrelevant to the patent venue analysis. Allegations that nationwide marketing activities reach a district or that citizens of a district can access a website cannot serve as a basis for venue, because they cannot establish that BMWNA has a

---

[4] Omega's Complaint omits the Savannah, Georgia distribution center, and Omega should not be allowed to rely on allegations not previously pled in its Complaint.
[5] *See* U.S. Dist. Ct., S.D. Ga., Court Locations, https://www.gasd.uscourts.gov/ (last visited Sept. 10, 2020) (listing Brunswick and Savannah locations).

physical place of business here or that third-party dealerships are venue-establishing, veil-piercing alter egos. *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018).

Fourth, the dealerships Omega identifies are independent third parties, not places of business *of BMWNA*, regardless of whether they contract with BMWNA to provide services as to automobiles. Omega speculates that third-party dealerships "act as the exclusive physical locations for BMWNA to advertise BMW inventory," D.I. 49 at 1, and that BMWNA "sells and offers to sell vehicles" at the dealerships, *id.* at 6. But dealers, not BMWNA, advertise and sell vehicles to customers at the dealerships. Indeed, Omega later concedes that customers here cannot "buy a new BMW from BMWNA directly." *Id.* at 13. And even if true, these are admissions that the physical place belongs to the dealers, not BWMNA.

Moreover, the law is clear that arms-length contracts with distributors, suppliers, and even subsidiaries do not connote venue. *See E-Sys. Design, Inc. v. Mentor Graphics Corp.*, No. 1:17-cv-1127-TCB, 2017 WL 8288122, at *2 (N.D. Ga. Nov. 13, 2017) (stating that plaintiff's "initial position" that venue could be established over a corporate subsidiary based on the location of a parent was incorrect and based on "old" cases, overturned by *In re Cray*, which held that places of different business divisions could be imputed to others for venue

purposes).[6] And, Omega cites no basis to impute the dealership's places of business to BMWNA, that is, to pierce the corporate veil, and which should only be done with "[g]reat caution" in order "to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Pazur v. Belcher*, 659 S.E.2d 804, 807 (Ga. Ct. App. 2008) (citations omitted).

## II.   OMEGA ASKS THE COURT TO APPLY THE WRONG STANDARD

### A.   The correct standard finds proper venue based on a third party's place of business *only* when corporate structure can be dissolved

Courts have unanimously answered the question of whether the physical presence of corporate entities independent and distinct from the defendant, such as distributors, dealers, sellers, and the like, meets the statutory requirements for venue in the negative. Omega does not cite a single non-vacated decision holding that non-party locations (even of direct subsidiaries) are venue-establishing places of business of separate corporate defendants, absent piercing the corporate veil.

As explained in BMWNA's opening brief, the general rule, nearly universally applied (including by this Court), states that "[s]o long as a formal separation of [closely related] entities is preserved, the courts ordinarily will not

---

[6] *EMED Techs.*, 2018 WL 2544564, at *2. (citing 14D Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3823 (4th ed. 2018)) (Bryson, J., Federal Circuit, sitting by designation); *W. View Research, LLC v. BMW of N. Am., LLC*, No. 16-CV-2590 JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5, 2018).

treat the place of business of one corporation as the place of business of the other."
*EMED Techs.*, 2018 WL 2544564, at *2 (alterations in original) ((citation
omitted); *see also Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-cv-00721-
ADA, D.I. 54 at 1 (W.D. Tex. July 27, 2020) (finding subsidiary's place of
business did not establish venue, as "line between [defendant] and its subsidiaries
have so blurred that the two become one"); *E-Sys. Design*, 2017 WL 8288122, at
*2 (explaining that it is incorrect, post-*In re Cray*, to impute the "regular and
established place[s] of business" of different business divisions to each other).

Omega *admits* that BMWNA and the dealerships are not alter egos. *Id.* at 12.
Instead, Omega asks this Court to impute dealer locations to BMWNA because
BMWNA allegedly "ratif[ied]" these locations, scoffing that BMWNA and
independent dealers are "somehow 'separate' entities." *Id.* at 2, 10. The
"somehow" is the corporate form, and Omega's idea that its "ratification" theory is
a novel "basis for venue" different from veil piercing (making the "abundant" case
law forbidding imputing one entity's place to another irrelevant), *id.* at 11-12, has
been rejected. *See, e.g.*, *Bd. of Regents v. Medtronic PLC*, No. A-17-CV-0942-LY,
2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (rejecting idea that Medtronic
"ratified" a subsidiary's location because they maintained corporate formalities).

Simply, places of business of third-party dealerships cannot be imputed to
BWMNA, absent dissolving the corporate structure and finding an alter ego

7

relationship. Omega concedes it cannot do this but nevertheless asks the Court to do it, disguising its "ratification" theory as the expressly rejected minimum-contacts venue analysis rejected by all courts. *See In re Cray*, 871 F.3d at 1361.

### B. Omega's reliance on the vacated *Blitzsafe* decision should be afforded no weight

Omega wrongly claims that "not a single case analyzes venue for a car manufacturer utilizing the exclusive sales, financing and warranty service BMW has established," D.I. 49 at 12-13, even though *West View Research* explicitly considered and rejected the very idea that physical places of business of independent dealerships could be imputed to BMWNA for venue purposes. 2018 WL 4367378. Ignoring direct authority still on the books, Omega primarily relies instead on the vacated Eastern District of Texas decision, *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL4849345 (E.D. Tex. Sept. 5, 2018).[7] The vacated *Blitzsafe* decision has no precedential or persuasive value.

Omega presumptuously speculates that *Blitzsafe* was vacated solely as part of a settlement agreement rather than "reconsideration of the law, facts[,] or analysis by the district court," D.I. 49 at 6 n.2, but the cause of vacatur is irrelevant. To "vacate" means to "annul, to set aside, to cancel, or to rescind,"[8] so a

---

[7] *Vacated sub nom. Blitzsafe Tex., LLC v. Mitsubishi Elec. Corp.*, 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019).
[8] *Black's Law Dictionary* (11th ed. 2019), vacate.

vacated judgment carries no weight. This is consistent with well-settled Supreme Court law. *See County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 577-78 n.12 (1975)); *see also United States v. Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950) (stating that courts commonly use vacatur to prevent judgments from having any legal consequences).

Omega's *Blitzsafe*-based argument is also at odds with Supreme Court and Federal Circuit instruction that § 1400(b) should be narrowly interpreted. *See Schnell*, 365 U.S. at 264; *In re Cray*, 871 F.3d at 1358-61 (rejecting a four-factor test for "what constitutes a regular and established places [sic] of business 'in the modern era,'" and cautioning that "[c]ourts should be mindful of [the] history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases"). Mindful of this binding precedent, there is no dispute among non-vacated decisions that the test for patent venue is a strict, bright-line one, not a nebulous, factor-based analysis open to case-by-case interpretation. *See* D.I. 43-1 at 13 n.9.

Moreover, *Medtronic* explicitly considered and rejected the Omega/*Blitzsafe* theory that "ratification" is a different patent venue theory than veil piercing. *See* 2018 WL 4179080. Specifically, in finding that defendant Medtronic had not "ratified" any of the in-district locations of its subsidiaries because they maintained

9

corporate formalities and separateness, the *Medtronic* court, on reconsideration, stated there is *one* exception for imputing the location of one corporate entity to a separate corporate entity for venue purposes, namely piercing the corporate veil:

> Except where corporate formalities are ignored and alter ego …
> exists, … a corporate relative in the district does not establish
> venue over another separate and distinct corporate relative.

*Id.* at *2.[9] BMWNA's Opening Brief raises *Medtronic*, but Omega ignores it entirely, a telling omission given that the *Medtronic* court initially took the position Omega advocates here, but on reconsideration, determined that BMWNA's position is correct. Omega's theory also requires ignoring the Supreme Court's and the Federal Circuit's rejections of a nebulous application of the patent venue statute. *See In re Google LLC*, 949 F.3d 1338, 1346-47 (Fed. Cir. 2020) ("[T]he Supreme Court has cautioned against a broad reading of the venue statute." (citing *In re Cray*, 871 F.3d at 1361; *Stonite Prods.*, 315 U.S. at 566)).

Indeed, since *TC Heartland*, the Federal Circuit has consistently rejected any broad application of the patent venue statute. *See In re Cray*, 871 F.3d 1355 (rejecting four-factor venue test in favor of clear venue application); *In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018) (rejecting placing the burden on defendant arguing for improper venue); *In re BigCommerce, Inc.*, 890 F.3d 978,

---

[9] *See also, e.g.*, *Post Consumer Brands, LLC v. Gen. Mills, Inc.*, No. 4:17-CV-2471 SNLJ, 2017 WL 4865936, at *2 (E.D. Mo. Oct. 27, 2017) (same).

986 (Fed. Cir. 2018) (rejecting conclusion that defendant can "reside" in several districts in a multi-district state); *In re Google*, 949 F.3d at 1346-47 (rejecting data servers maintained by third parties as a basis for venue). Given these decisions and the plethora of case law contrary to Omega's arguments, Omega's demand that this Court impermissibly construe § 1400(b) broadly should be rejected.

## III.   OMEGA ADMITS THAT IF THE COURT REQUIRES DISSOLUTION OF THE CORPORATE STRUCTURE, THEN THE NON-PARTY DEALERSHIPS ARE NOT PLACES OF BMWNA

Omega admits that the dealerships are separate and distinct entities from BWMNA by admitting that its "basis for venue is not the allegation that BMWNA and its dealerships are alter egos." D.I. 49 at 12. Should this Court adopt the well-established standard that a place of business of one entity cannot become the place of another absent veil piercing, then here, Omega clearly has not pleaded venue.

For example, Omega expressly and tactically admits that the places of business of the independent, third-party dealers are not places *of BMWNA*. In its Complaint, Omega admitted that BMWNA does not sell any vehicles to customers in this District; instead, the five identified non-party dealerships sell vehicles. D.I. 1, ¶ 4. Omega also claims BMWNA's website conflates BMWNA with third-party dealerships, but BMWNA's website clearly states that all third-party dealerships are "*non-affiliated companies* that market our products and services

. . . . ."[10] Omega's silence on other relevant considerations is just as telling as its admissions. Omega does not allege that the dealerships are maintained and paid for by BMWNA, which is a strong indication of whether the dealerships are places of business *of BMWNA*. *See Brevel*, 202 F. Supp. at 827 (concluding that, to be a place of business of the defendant, the place "must be maintained and paid for by the defendant. The mere fact that defendant hires a sales representative who in turn rents offices to sell defendant's products is insufficient." (citations omitted)). Moreover, the five independent automotive dealerships cannot be places of business of BMWNA under Ga. Code Ann. § 10-1-664.1, which prohibits ownership by BMWNA and requires that the dealerships retain separate corporate ownership. Omega misinterprets this statute, strangely alleging that a law expressly prohibiting BMWNA from "ownership, operation, or control" supports a finding that BMWNA nonetheless "control[s]" the dealerships' places of business because BMWNA would otherwise be unable to conduct business here. D.I. 49 at 13 n.5.

This again conflates the old patent venue test, where doing business in the district was sufficient for venue, with the new, applicable test for venue, which requires a physical place of business *of the defendant. See E-Sys. Design*, 2017 WL 8288122, at *2. Second, Omega ignores the fact that the Georgia Code not only

---

[10] *See* BMWNA, BMW Privacy Policy, https://www.bmwusa.com/privacy-policy/index.html (last visited Sept. 10, 2020) (emphasis added)

prohibits *ownership* of the dealership but also *control* of the dealership. Ga. Code Ann. § 10-1-664.1(a). Thus, Omega's claim that BMWNA "*controls, facilitates[,] and coordinates*" buying a car through a local dealer is a false legal conclusion whose adoption would require directly contradicting Georgia law. *See* D.I. 49 at 13-14 (also wrongly claiming, e.g., that BMWNA arranges test drives and shows customers local inventory, though dealerships obviously perform such tasks).

Despite lacking any factual and legal support for its claims as to the dealerships, Omega summarizes its argument with a convoluted analogy, arguing that the "sale of a light bulb in Home Depot is far different than the integrated sales, financing[,] and service performed by BMWNA through its exclusive dealers," as dealerships do not sell "dozens of different cars" and are exclusive dealers of BMW vehicles. *Id.* at 13. Beyond the fact that Home Depot may well be the exclusive dealer of certain light bulbs, this analogy fails for several reasons.

First, Omega again conflates doing business in the District (the old test) with having a place of business in the District (the applicable test). This error is enough.

Second, Omega does not plead any facts to support that BMWNA is the entity performing "sales, financing[,] and service." *Id.* Indeed, BMWNA only sells cars to dealerships, not customers. Omega admits that dealers perform warranty service and sell the vehicles to customers. *See id.* at 10 (all warranty service is performed at dealerships), 13 (customers cannot buy from BMWNA directly).

Third, Omega's analogy would hold corporations subject to venue wherever they contract with third parties. This has been rejected in the patent law context. *See Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) (independent dealers that honor warrantees are not manufacturer's places of business); *Grantham v. Challenge-Cook Bros*., 420 F.2d 1182, 1184-85 (7th Cir. 1969) (reciting cases where venue was improper, including where defendant had authorized, exclusive in-district dealers for warranty service).[11] Further, Omega's reliance on *Morano v. BMW of North America, LLC*, 928 F. Supp. 2d 826 (D.N.J. 2013)—a decision pre-dating *TC Heartland*'s 2017 correction to the patent venue law—is misplaced because it holds only that BMWNA is in privity with customers for the purpose of enforcing warranty contracts as the ultimate warrantor. *Id.* at 835-36. Omega cites no patent venue cases finding venue based on privity.

Fourth, courts have expressly rejected the "exclusive" or "necessary distributor" theory of imputing venue from one corporate entity to another, where corporate separateness is maintained. *Id.* at 1184-85; *EMED Techs.*, 2018 WL 2544564, at *3 (the "'necessary distributor' theory *makes no sense* in light of the language and purpose underlying the patent venue statute, 28 U.S.C. § 1400(b)" (emphasis added)). Thus, just as lightbulb sales at Home Depot would fail to

---

[11] *See also Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS-RSP, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017); *AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018)

establish venue over a manufacturer, so, too, do dealership sales fail to establish venue over BMWNA. *See OptoLum, Inc. v. Cree, Inc.*, No. CV-16-03828-PHX-DLR, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling products at Home Depot stores does not establish a place of business for the manufacturer).

## IV.   THIS CASE SHOULD BE DISMISSED

As Omega has pleaded no place of business *of BMWNA* in this District, venue is improper. Thus, BMWNA respectfully requests that the Court dismiss Omega's Complaint.

Respectfully submitted,

Dated:      September 14, 2020

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

Kara A. Specht (*Ga. Bar No. 881687*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400

R. Benjamin Cassady (*pro hac vice*)
Kai Rajan (*pro hac vice*)
Kevin J. Spinella (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant BMW of North
America, LLC*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record who have appeared in this case.

<u>/s/ Kara A. Specht</u>

Kara A. Specht (*Ga. Bar No. 881687*)
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400

*Attorney for Defendant BMW of North
America, LLC*